UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JARVIZ J. BROWN, # 822115[1]

        Petitioner,                   Civil No. 2:22-cv-12666

   v.                            Hon. George Caram Steeh

JEFF TANNER,

        Respondent.
_____/

## OPINION AND ORDER (1) AMENDING THE CASE CAPTION, (2) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (3) DENYING A CERTIFICATE OFAPPEALABILITY, AND (4) DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

This is a habeas action filed under 28 U.S.C. § 2254.  Michigan prisoner Jarviz J. Brown challenges his jury-based convictions for assault with intent to murder (AWIM), Mich. Comp. Laws § 750.83(1); intentional discharge of a firearm from a vehicle causing serious impairment of a body function of another individual (intentional discharge of a firearm from a

---

[1] The Court notes that Petitioner's name appears on his petition caption as "Jariz J. Brown"; however, the state-court record and his offender profile on the Michigan Department of Corrections Offender Tracking Information System ("OTIS") show that his name is Jarviz J.  Brown.  Accordingly, the Court will amend the case caption to reflect the correct spelling of Petitioner's name.  Additionally, the proper respondent in a habeas action is the petitioner's custodian.  *See* Rule 2(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254.  Petitioner is presently incarcerated at the Macomb Correctional Facility where Jeff Tanner is the Warden.  The Court directs the Clerk of Court to amend the case caption to substitute Jeff Tanner as the respondent.

vehicle), Mich. Comp. Laws § 750.234a(1)(c); and three counts of

possession of a firearm during the commission of a felony (felony-firearm),

Mich. Comp. Laws § 750.227b.  Petitioner raises three claims concerning:

his sentence, sufficiency of the evidence, and the trial court's denial of his

motion for severance. For the reasons below, the Court will deny the

petition. The Court will also deny a certificate of appealability and deny

leave to appeal *in forma pauperis* should Petitioner choose to appeal this

decision.

## I.   BACKGROUND

Petitioner's convictions arose from an altercation that began in a

parking lot of a fast-food restaurant and escalated to a shooting at the

victim's home.  The following facts as recited by the Michigan Court of

Appeals are presumed correct on habeas review. *Wagner v. Smith*, 581

F.3d 410, 413 (6th Cir. 2009); 28 U.S.C. § 2254(e)(1):

> In August 2018, Lakesha Bills drove her young children and her
> brother, Anthony Bacon, to a fast-food restaurant in Battle
> Creek [at] lunchtime. There, they encountered defendants in
> the parking lot. Bacon and defendants had an acrimonious
> relationship. Bacon instructed Bills to drive away, but before
> she could do so, defendants approached her vehicle and
> exchanged harsh words with Bacon. Threats to fight were made
> both ways, Brown allegedly threatened to kill Bacon, and Bacon
> spit at West. Bills finally drove away, but Brown followed in his
> white Jaguar, with West in the passenger seat. Bills was able to
> briefly elude them before arriving at her home. Shortly after
> arriving home, as Bills was attempting to hurry her children

inside the house, Brown's car came around the corner and Bacon and Bills heard shots. Bacon took cover between vehicles in the driveway and brandished his gun, shooting back one or two times. Bullets fired by West as he stood up through the Jaguar's sunroof struck the vehicle near Bacon, the side and front of Bills's house, and the living room. West shot at least 11 times. Bills was hit by a bullet that lodged near her spine and paralyzed her legs. Brown sped away and drove to sibling Harry Gibson's home, where defendants switched vehicles. They were subsequently apprehended near Kalamazoo.

*People v. Brown*, No. 350735, 2021 WL 1157659, at *1 (Mich. Ct. App.

Mar. 25, 2021)

Petitioner was tried jointly with his co-defendant Davon Caprice West. A Calhoun County jury convicted Petitioner of AWIM, intentional discharge of a firearm from a vehicle, and three counts of felony-firearm.  The trial court sentenced him to 35 to 50 years' imprisonment for the AWIM conviction, 13 to 30 years for the intentional discharge of a firearm from a vehicle conviction, and three concurrent two-year terms for the felony-firearm convictions, to be served consecutively to the other sentences.

Petitioner appealed his convictions and sentence to the Michigan Court of Appeals, raising claims concerning sufficiency of the evidence, severance, and sentencing.  On March 25, 2021, the Michigan Court of Appeals affirmed his convictions and sentence in an unpublished per curiam opinion.  *See Brown*, 2021 WL 1157659, at *9.  Petitioner filed an

application for leave to appeal in Michigan Supreme Court.  On August 3,

2021, the supreme court denied the application.  *See People v. Brown*, 508

Mich. 896, 962 N.W.2d 305 (2021).

On November 4, 2022, Petitioner initiated the present habeas action

in this Court raising the following claims:

I.      Petitioner's sentence of 35 years to 50 years fails to
        comply with the indeterminate sentence act. Mich. Comp.
        Laws §§ 769.8, 769.9.

II.     The evidence presented at trial was insufficient to sustain
        petitioner's convictions.

III.    Trial court abused its discretion in denying petitioner's
        motions for separate trials in violation of his due process
        right to a fair trial.

ECF No. 1, PageID.39-42.

Respondent filed an answer contending that claims lacked merit and

do not warrant habeas relief.

## II.    STANDARD OF REVIEW

The following standard of review applies to § 2254 habeas petitions:

(d) An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court
shall not be granted with respect to any claim that was
adjudicated on the merits in State court proceedings unless the
adjudication of the claim

(1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established

- 4 -

Federal law, as determined by the Supreme Court of the
United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if
it either (1) applies a standard different than what Supreme Court
precedent instructs to apply or (2) applies the correct precedent to
materially indistinguishable facts but reaches a different result. *Williams v.
Taylor*, 529 U.S. 362, 397, 405–06, 413 (2000). But a state court decision
that applies a state-law standard is not "contrary to" clearly established
federal law if the state standard is practically similar to Supreme Court
precedent. *See Robertson v. Morgan*, No. 20-3254, 2020 WL 8766399, at
*4 (6th Cir. Dec. 28, 2020) (holding state decision was not "contrary to"
because it applied a state-law standard bearing "some similarity" to the
*Brady* standard).

The Antiterrorism and Effective Death Penalty Act's habeas
provisions, 28 U.S.C. § 2255, "impose[ ] a highly deferential standard for
evaluating state-court rulings," and "demands that state-court decisions be
given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010)
(internal citations omitted). Indeed, a "state court's determination that a

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In this way, to obtain habeas relief in federal court, a state prisoner must show that the state court's denial "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

### III.    DISCUSSION

#### A. Sentencing Claim

Petitioner first contends that his sentence is invalid because it violates the rule announced in *People v. Tanner*, 387 Mich. 683 (1972). *Tanner* held "that any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act." 387 Mich. at 690.

The Michigan Court of Appeals rejected Petitioner's claim because, '"[w]hile at first blush, a sentence of 35 to 50 years appears to violate the *Tanner* rule, and all parties originally agreed on this point, our Supreme

- 6 -

Court has determined that the two-thirds rule does not apply to sentences where the statutory maximum is life or any term of years." And "[t]he AWIM statute provides for a maximum term of "life or any number of years." *Brown*, 2021 WL 1157659, at *8 (internal quotation marks omitted).

The state court's conclusion that Petitioner's sentence for AWIM did not violate the two-thirds rule of *Tanner*, binds this Court on habeas corpus review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Therefore, Petitioner's sentencing claim lacks merit.

### B. Sufficiency of the Evidence

Petitioner next argues that the prosecutor presented insufficient evidence of his intent to commit the charged crimes under an aiding and abetting theory. The Michigan Court of Appeals rejected that argument in a thorough analysis, concluding:

> In this case, the jury heard testimony that Brown and West are brothers, that Brown threatened Bacon during their argument at the fast-food restaurant, that Bacon antagonized West by spitting at him, and that Brown followed Bills's car after she drove away with Bacon from the restaurant. A reasonable jury could infer from Brown's pursuit of Bills's car that he was intent on prolonging the argument. The jury also heard testimony that Bills attempted to drive so as to elude Brown. From this, the

jury could reasonably infer that the threat of murder against Bacon was convincing, that Bacon knew he had antagonized West by spitting at him, and that Bills and Bacon took the situation seriously. A person making a local delivery testified that he saw a whiteish car driving aggressively and running a stop sign, which suggests Brown's determination to locate and catch up with Bills and Bacon before they could disappear. Testimony further indicated that West stood up through the sunroof of Brown's car and was shooting as the car traveled from Washington Street onto West Goguac Street, around the corner where Bills's house stood. This occurred soon after Bills and Bacon arrived at Bills's home, and before they had time to go from the car into Bills's home. A crime technician testified that Bills's car was hit three times, there were bullet holes in Bills's residence, and bullet fragments were found inside the living room. From this, a jury could reasonably infer that Brown drove fast enough to allow them to catch Bacon and Bills by surprise, and steady enough to enable West to fire multiple times with some accuracy in Bacon's direction. Moreover, Bills testified that Brown's car came to a complete stop at the end of her driveway in front of her house, from which a jury could reasonably infer that Brown was aiding, and even encouraging, West to shoot Bacon, whom testimony places in the driveway while the shooting is occurring. Finally, Brown assisted and participated in West's fleeing; he left the scene and they immediately exchanged cars and drove to a different city.

Intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon. See *People v. Henderson*, 306 Mich. App. 1, 11, 854 N.W.2d 234 (2014), overruled on other grounds *People v. Reichard*, 505 Mich. 81, 949 N.W.2d 64 (2020). Here, although Brown did not fire a gun at Bacon and Bills, the jury heard testimony indicating that he threatened to kill Bacon, who antagonized West, then drove West to where Bacon was, and handled his car in a way that enabled West to fire a weapon multiple times at Bacon through the sunroof. The jury could reasonably infer from the brothers' close association, from Brown's facilitation of West's shooting at Bacon, including stopping in front of Bills's house after the shooting began, and from Brown's attempt after the shooting to

help West avoid detection, that he aided and abetted in an assault on Bacon with an intent to kill him. *See Carines*, 60 Mich. at 758, 27 N.W. 705.

Brown and West testified that they thought they were going to a fistfight with Bacon and they did not intend to kill him. However, the jury verdicts indicate that the jury did not find defendants' testimony credible, and this Court will "not interfere with the fact-finder's role in deciding the weight and credibility to give to a witness's testimony." See *Lemmon*, 456 Mich. at 646-647, 576 N.W.2d 129; see also *Nowack*, 462 Mich. at 400, 614 N.W.2d 78.

We also conclude that plaintiff presented sufficient evidence to support Brown's conviction of the intentional discharge of a firearm from a vehicle in violation of MCL 750.234a(1)(c). Brown contends the evidence was insufficient to support the conviction because both he and West testified that Brown did not know West had a gun. The jury heard this testimony and found that it was not credible. As already indicated, we will not interfere with the fact-finder's credibility determination. See *Nowack*, 462 Mich. at 400, 614 N.W.2d 78. Even if Brown did not initially know that West had a gun, the jury heard testimony from which it might reasonably infer that Brown drove in a manner that enabled West to shoot multiple times at Bacon, and even stopped in front of Bills's house after the shooting began. This testimony, if believed, is sufficient to demonstrate that, after he discovered West had a gun, Brown nevertheless took measures to assist West in his intentional discharge of the firearm from the vehicle. There is no dispute that Bills was shot in the back and lost the use of her legs as a consequence.

As to aiding and abetting felony-firearm, the Michigan Supreme Court explained in *Moore*, 470 Mich. at 70-71, 679 N.W.2d 41:

> Establishing that a defendant has aided and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement

that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime. [Citation omitted.]

Brown once more contends that the evidence was insufficient to support his felony-firearm conviction because he and West testified that he did not know West had a gun. Again, Brown asks this Court to reject the fact-finder's credibility assessment and reasonable inferences from the evidence and again, we decline to do so. See *Nowack*, 462 Mich. at 400, 614 N.W.2d 78. In addition, Detective Tyler Sutherland described mannerisms a person would adopt if they were concealing a gun, and the jury viewed video of Brown and West from the fast-food restaurant that showed West holding something under his shirt. The jury could infer from the video whether West had a gun and whether Brown would have observed West's having a gun. Further, the same evidence that supports the reasonable inference that Brown performed acts assisting West's shooting a firearm from the vehicle also support the jury's finding that Brown "performed acts or gave encouragement that assisted in [West's] commission of the felony-firearm violation, and that [Brown] intended the commission of the felony-firearm violation or had knowledge that [West] intended its commission at the time that [Brown] gave aid and encouragement." *Moore*, 470 Mich. at 70-71, 679 N.W.2d 41.

Reviewing the evidence in the light most favorable to the prosecution, *Meissner*, 294 Mich. App. at 452, 812 N.W.2d 37, deferring to the jury's credibility assessments, *Nowack,* 462 Mich. at 400, 614 N.W.2d 78, and resolving all conflicts in the evidence in favor of the prosecution, *Kanaan*, 278 Mich. App. at 619, 751 N.W.2d 57, we conclude that the evidence was sufficient to support the jury's conviction of Brown for AWIM,

intentional discharge of a firearm from a vehicle, and felony-firearm.

*See Brown*, 2021 WL 1157659, at 2-5.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. The Federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

A federal court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should

be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S.

1, 2  (2011) (per curiam). "A reviewing court does not re-weigh the

evidence or re-determine the credibility of the witnesses whose demeanor

has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d

780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434

(1983)). Accordingly, the "mere existence of sufficient evidence to convict

. . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-789.

Under Michigan law, the elements of AWIM are: (1) an assault, (2)

with an actual intent to kill, (3) which if successful, would make the killing

murder. *See Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (citing

Michigan law); *People v. Ericksen*, 288 Mich. App. 192, 195, 793 N.W.2d

120 (2010); Mich. Comp. Laws § 750.83. The intent to kill may be proven

by "the nature of the defendant's acts constituting the assault; the temper

or disposition of mind with which they were apparently performed, whether

the instrument and means used were naturally adapted to produce death,

[the defendant's] conduct and declarations prior to, at the time, and after

the assault, and all other circumstances calculated to throw light upon the

intention with which the assault was made." *People v. Taylor*, 422 Mich.

554, 568, 375 N.W.2d 1 (1985) (citation and quotation marks omitted). The

use of a lethal weapon supports an inference of an intent to kill. *People v.*

*Dumas*, 454 Mich. 390, 403, 563 N.W.2d 31 (1997); *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975). The crime of intentional discharge of a firearm from a motor vehicle requires proof that the defendant discharged a firearm from a motor vehicle in a manner so as to endanger another person. Mich. Comp. Laws § 750.234a; *see also People v. Cortez*, 206 Mich. App. 204, 205-206, 520 N.W.2d 693 (1994). The elements of felony firearm are: (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense. *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); Mich. Comp. Laws § 750.227b.

Mich. Comp. Laws § 767.39 provides for convictions on an aiding and abetting theory, subject to the same punishment as a principal. To support a conviction on an aiding and abetting theory, the prosecution must prove that the crime occurred, the defendant "performed the acts or gave encouragement that assisted the commission of the crime," and that the defendant either intended the commission of the crime or knew the principal intended to commit the crime when he gave aid and encouragement. *People v. Robinson*, 475 Mich. 1, 6; 715 N.W.2d 44 (2006).

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999); *Fuller v. Anderson*, 662 F. 2d at 424. "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt. In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability." *See Long v. Stovall*, 450 F. Supp. 746, 754 (E.D. Mich. 2006)(internal citation omitted). An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal. Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002). Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id*.

As with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409, 149 N.W.2d 216, *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind. *Dumas*, 454 Mich. at 398, 563 N.W.2d 31; *see also People v. Nowack*, 462 Mich. 392, 402-403, 614 N.W.2d 78 (2000).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Petitioner aided and abetted West during the shooting and was not merely present.  Testimony supports that a heated exchange occurred between Petitioner, West, and Bacon prior to the shooting.  Bacon testified that he spit on West.  ECF No. 9-5, PageID.661.  He further testified that in response to spitting on West one of the men threatened to kill him.  ECF No. 9-6, PageID.801.  When Bacon and Bills left the restaurant, Petitioner and West followed them to Bills's house.  Timothy Douglas testified that he saw a white car driving aggressively and running a

stop sign.  ECF No. 9-5, PageID.574.  Petitioner testified that he was

driving the white vehicle at the time. ECF No. 9-8, PageID.1091.  Raheem

Milliner testified that he saw a man shooting out of the car's sunroof.  ECF

No. 9-5, PageID.741.  Bills confirmed that individual was West.  ECF No. 9-

7, PageID.978.  Bills further testified that the car came to a full stop in front

of her driveway and West continued firing multiple shots.  *Id*. One of the

bullets hit Bills.  *Id*. at PageID.983.

While Petitioner argues that he lacked intent to kill because he did not

know West had a gun, "[a] defendant's 'reactions to the circumstances' of a

crime may suggest involvement (or for that matter lack of involvement) with

a crime." *Bell v. Jackson*, 379 F. App'x. 440, 446 (6th Cir. 2010).  The

present record suggests that Petitioner supported or encouraged West's

criminal acts through his aggressive pursuit of Bills's vehicle and by

positioning his car in front of the driveway to allow West the opportunity to

shoot. Moreover, by returning a guilty verdict, the jury rejected Petitioner's

testimony that he did not know that West had pulled the gun from the glove

box and tried to drive away when the shooting began.

In light of the evidence presented in this case, the Michigan Court of

Appeals did not unreasonably apply clearly established federal law in

determining that the evidence was sufficient to convict Petitioner of the

charged crimes under an aiding and abetting theory. *See Brown v. Konteh*, 567 F. 3d 191, 209-12 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his sufficiency of evidence claim.

### C. Motion to Sever Trial

Lastly, Petitioner argues that the trial court erred by denying the joint motion to sever the trial because his defense was irreconcilable with his co-defendant's  defense.  On direct appeal, the Michigan Court of Appeals rejected this argument, concluding that:

> The trial court did not abuse its discretion by denying defendants' joint motion for severance. Although defendants offered conclusory statements regarding why their trials should be severed, they provided no facts indicating that their defenses were mutually exclusive or that prejudice would result from a joint trial. See *Id*. at 20-21, 949 N.W.2d 666 (indicating that a trial court can reject statements regarding irreconcilable defenses that lack sufficient specificity or are conclusory because a defendant's claim of prejudice must be substantiated through concrete facts).

> On appeal, Brown contends that his and West's defenses were irreconcilable because he claimed that he thought that he was driving to Bills's home for a physical fight, and did not know West had a gun, and West claimed that he had hidden the gun and took it out to return fire after Bacon shot at them. These versions of the drive-by shooting are not mutually exclusive. The jury did not have to reject West's defense that Bacon shot first in order to believe Brown's defense that he did not know West had a gun until he fired it. In fact, after West testified, Brown was asked whether West had testified accurately, and Brown replied that he recalled the events vividly, and that West's testimony was "very accurate." Because Brown's and

West's defenses were not mutually exclusive, severance was not warranted. *Id.* at 21, 949 N.W.2d 666.

As to prejudice, Brown contends on appeal that the jury convicted him merely because he was present in the car with West while West and Bacon engaged in a gunfight. However, as discussed above, the evidence was sufficient for a reasonable trier of fact to conclude beyond a reasonable doubt that Brown aided and abetted in the commission of AWIM, the intentional discharge of a firearm from a vehicle, and felony-firearm. Accordingly, Brown's assertion that he was convicted because of his mere presence is unavailing. Because Brown has failed to show on appeal "that the requisite prejudice in fact occurred at trial," we will not reverse the trial court's joinder decision. *Id.* (quotation marks and citation omitted).

*See Brown*, 2021 WL 1157659, at *5-6.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. "A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden[,]" as generally, "joint trials are favored." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (citing *United States v. Horton*, 847 F.2d 313, 316 (6th Cir. 1988) and *United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir. 1984)). On habeas review, the Court must ask whether the failure to sever the trials impinged on the petitioner's right to due process of law. *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007). To establish a due process violation, Petitioner must show that the joint trial " 'result[ed] in prejudice so great as

to deny [Petitioner his] . . .  right to a fair trial.' " *Id*. (quoting *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986)).

Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Stanford v. Parker*, 266 F.3d 458–459 (6th Cir. 2001) (punctuation modified). The decision whether to grant a motion for severance is within the trial judge's discretion, and an "alleged abuse of [that] discretion, without more, is not a constitutional violation." *Id*. at 459. A separate trial is not required simply because defendants present antagonistic defenses. *Id*. at 458. Antagonistic defenses exist "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993). "The mere fact that each defendant points the finger at another is insufficient [to require severance]; the defendant must show that the antagonism confused the jury." *United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988).

Petitioner argues that the trial court's denial of the severance motion resulted in a fundamentally unfair trial because his defense conflicted with West's. The Court disagrees. The state-court record belies Petitioner's argument and shows that the defenses were substantially similar and

- 19 -

neither defense was predicated solely on the guilt of a co-defendant. For instance, both defendants testified that there was a heated verbal exchange with Bacon in the restaurant parking lot. ECF No. 9-8, PageID.1052 (West), 1083 (Brown). Further, both defendants testified that they followed the vehicle to Lakesha Bills' residence to "fist fight" Bacon. *Id.* at 1055 (West), 1084 (Brown). West testified that his firearm was in the glove compartment of Petitioner's vehicle and that Petitioner did not know it was placed there, and Petitioner testified that he was unaware that West possessed a gun. *Id.* at PageID.1055 (West), 1086-87 (Brown). Both testified that West had jumped out of the vehicle when they reached Bills's residence, but immediately jumped back in because Bacon had a gun. *Id.* at 1058 (West), 1085 (Brown). Both suggested that Bacon fired his gun first and that West shot his gun in response. *Id.* at 1073 (West), 1086 (Brown). Importantly, when defense counsel asked Petitioner if West's testimony was accurate, he testified: "very accurate." *Id.* at PageID.1081. In sum, both Petitioner's and West's defenses were nearly identical. Petitioner has not shown prejudice from the joint trial and, thus, fails to establish that the state court's ruling denying his claim was unreasonable. For these reasons, Petitioner is not entitled to habeas relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas on the merits, the substantial-showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). In applying that standard, a district court may not conduct a full-merits review; it must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336–37 (2003). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Because reasonable jurists would not disagree that Petitioner has not substantially showed the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2). And Petitioner will be

denied leave to appeal *in forma pauperis* because his appeal would be frivolous. *See* FED. R. APP. P. 24(a).

## V.  CONCLUSION

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED**.

Further, it is **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**.

Further, it is **ORDERED** that the case caption be amended as "*Jarviz J. Brown v. Jeff Tanner*."

**This is a final order and closes the above-captioned case**.

**IT IS SO ORDERED.**

Dated:  February 7, 2025

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on February 7, 2025, by electronic and/or ordinary mail
and also on Jarviz Brown #822115, Alger Correctional
Facility, N6141 Industrial Park Drive, Munising, MI 49862.

s/LaShawn Saulsberry
Deputy Clerk